UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY ALLEN MALOY,

    Plaintiff,

v.                                                                                Case No: 8:15-cv-2587-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Jeffrey Allen Maloy, seeks judicial review of the denial of his claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

**A.**    **Procedural Background**

Plaintiff filed an application for supplemental security income on May 5, 2012. (Tr. 21, 141, 172.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 79-84, 87-95.) Plaintiff then requested an administrative hearing. (Tr. 96-97.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 34-51.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 18-29.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-3.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B. **Factual Background and the ALJ's Decision**

Plaintiff, who was born on February 28, 1967, claimed disability beginning on January 5, 2012. (Tr. 28, 21, 141.) Plaintiff has a limited education. (Tr. 28.) Plaintiff has no past relevant work experience. (Tr. 28.) Plaintiff alleged disability due to diabetes, high blood pressure, chronic neck and back problems, and hepatitis B and C. (Tr. 177.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 5, 2012, the application date. (Tr. 23.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, depression, and anxiety. (Tr. 23.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24.)

The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.976(b) except the claimant can do occasional lifting of no more than 25 pounds, frequent lifting of no more than 10 pounds and sit, stand and walk for 6 hours in an 8 hour workday. The claimant has unlimited abilities to push and pull. The claimant has no manipulative, visual, communicative, postural or environmental limitations, except for avoidance of ropes, ladders, scaffolds and unprotected heights. He has some limitation in attention and concentration that would limit pace and persistence occasionally, but not at a level that would significantly limit productivity. He can hear, understand, learn, remember and carry out detailed work instructions, make work decisions and sustain attention and concentration sufficient to complete an 8-hour workday and 5-day workweek. He can respond appropriately to supervision, adapt to a work setting and interact appropriately with co-workers, supervisors and the general public. He can use public transportation and can be aware of common hazards in the workplace and take appropriate precautions.

(Tr. 26.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 27.)

The ALJ found that Plaintiff is limited to unskilled light work. (Tr. 29, 76-77.) The ALJ concluded that, given Plaintiff's age, education, work experience, and RFC, there are other jobs existing in significant numbers in the national economy that Plaintiff is capable of performing. (Tr. 28.) Accordingly, the ALJ found Plaintiff not disabled. (Tr. 29.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's findings in the RFC assessment were not supported by substantial evidence; (2) the ALJ erred by relying on the Medical Vocational Guidelines to find Plaintiff not disabled because the ALJ failed to properly credit all of Plaintiff's exertional and non-exertional impairments; and (3) the ALJ erred in discrediting Plaintiff's testimony regarding his pain. For the reasons that follow, none of these contentions warrant reversal.

**A.     The ALJ's RFC Assessment**

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. *Id.* § 404.1545(a)(1), (3). The ALJ will consider the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC. *Id.* § 404.1545(e). Ultimately, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See id.* § 404.1545(a)(3) (stating that all of the record evidence is considered in the RFC assessment). The final responsibility for deciding the RFC is reserved for the Commissioner. *Id.* § 404.1527(d)(2).

### 1. Plaintiff's Unlimited Ability to Push and Pull

Plaintiff first contends that the ALJ did not consider all of his limitations when determining Plaintiff's ability to push and pull. Specifically, Plaintiff claims that the ALJ erred by not considering Plaintiff's hand contractures. (Dkt. 15 at 12-13.) Plaintiff relies on two diagnoses of hand contractures, the first on August 25, 2011 by Dr. Humberto Perez and the second on June 13, 2012 by Dr. Hesan Mousli. (Tr. 359, 298.) Of note, Dr. Perez's diagnosis occurred almost five months prior to Plaintiff's alleged disability onset of January 5, 2012, and Plaintiff did not list hand contractures or hand pain as a disability in his May 16, 2012 Disability Report. (Tr. 141, 177.) Plaintiff also relies on his own testimony that he has limitations with grasping and holding and can only grasp or hold something for four hours out of an eight-hour workday. (Tr. 44-45.) Plaintiff cites no medical opinion that Plaintiff's hand contractures resulted in any limitation in his ability to push and pull.

Plaintiff bears the burden of showing that he has a severe impairment or combination of impairments that may qualify as a disability. *Hutchinson v. Astrue*, 408 Fed. App'x. 324, 326 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Proof of the mere existence of an impairment does not prove the extent to which the impairment may limit Plaintiff's ability to work. *Hutchinson*, 408 Fed. App'x. at 326. Here, Plaintiff points to no medical evidence indicating that Plaintiff's hand contractures effected his ability to work. Plaintiff argues inferentially that the diagnosis of hand contractures "alone would create some limitations with pushing and pulling."

(Dkt. 15 at 13.)  This sort of extrapolation is insufficient to warrant a reversal of the ALJ's RFC determination.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Plaintiff argues that the ALJ failed to mention the hand contractures in her opinion.  (Dkt. 15 at 13.)  However, there is no requirement that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in her decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Rather, the district court must review the ALJ's decision for whether the ALJ considered the plaintiff's medical condition as a whole and determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record.  *Id.* (quoting *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995)).  Substantial evidence is something "more than a mere scintilla, but less than a preponderance."  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Here, the ALJ specifically stated that she carefully considered the entire record in reaching her conclusion.  (Tr. 26.)  Further, the ALJ addressed Plaintiff's testimony regarding his hand pain and ability to grasp things for fifteen to thirty minutes.  (Tr. 27.)  Moreover, while Plaintiff has no evidence that his hand contractures limits his ability to push and pull, the ALJ relied on the opinion of state agency physician Dr. Audrey Goodpasture in determining that Plaintiff has unlimited abilities to push and pull.  (Tr. 28, 72, 74.)  Dr. Goodpasture opined that Plaintiff's ability to push and pull is unlimited.  (Tr. 72.)  Therefore, the ALJ's determination was supported by substantial evidence, and Plaintiff's contention does not warrant reversal.

### 2. Plaintiff's Limitations in Attention and Concentration

Plaintiff next argues that the ALJ erred in her RFC determination in finding that Plaintiff had some limitations in attention and concentration that would limit pace and persistence occasionally, but not a level that would significantly limit productivity.  (Dkt. 15 at 13.)

Specifically, Plaintiff claims that the ALJ's RFC determination that Plaintiff's limitation in attention and concentration would not significantly limit his productivity is inconsistent with her finding that Plaintiff has moderate difficulties with concentration, persistence or pace at step two of the sequential evaluation process. *Id*.

Plaintiff relies on *Millhouse v. Astrue*, No. 8:08CV378T-TGW, 2009 WL 763740 (M.D. Fla. Mar. 23, 2009) for the argument that the ALJ's moderate findings in step two are inconsistent with a limitation to unskilled work at steps four and five. (Dkt. 15 at 14.) The court in *Millhouse* took issue with the lack of detail and explanation in the determination of the plaintiff's mental RFC. There, the ALJ found at step two that the plaintiff had a severe impairment of depression that resulted in moderate difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace. *Id*. at *2. However, in connection with the determination of the plaintiff's RFC at steps four and five, the ALJ simply found that "'[d]ue to the claimant's mental impairments, she is limited to performing work that is unskilled in nature.'" *Id*.

The court found the two findings inconsistent because the ALJ did not comply with Social Security Ruling 96-8p. Under Social Security Ruling 96-8p, there must be a more detailed assessment of a plaintiff's work-related mental activities:

> 'The mental RFC assessment at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories' found in the four functional areas used at step two. Social Security Ruling 96–8p, 1996 WL 374184 at *4 (S.S.A.). 'Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.' *Id.* at *6.

*Id*. at *3. The court went on to state that "[s]imply finding that the plaintiff had a mental limitation of unskilled work clearly does constitute 'a more detailed assessment by itemizing various

functions contained in the broad categories' of social functioning and concentration, persistence, or pace." *Id*. (citation omitted). In short, the court found that the ALJ's conclusion needed more explanation. *Id*. Further, the ALJ in *Millhouse* found that the plaintiff had moderate limitations in social functioning as well as in concentration, persistence, or pace. *Id*. at *2. This was a significant part of the court's decision, stating that "[i]n all events, a restriction to unskilled work plainly does not cover a moderate limitation in social functioning." *Id*. at 3.

This case is distinguishable from *Millhouse*. Here, the ALJ found that Plaintiff has a mild limitation in social functioning. (Tr. 25.) Further, the ALJ complied with Social Security Ruling 96-8p and provided more explanation for her RFC decision than the ALJ in *Millhouse*. Specifically, the ALJ found that Plaintiff can "hear, understand, learn, remember and carry out detailed work instructions, make work decisions, and sustain attention and concentration sufficient to complete an 8-hour workday and 5-day workweek. He can respond appropriately to supervision, adapt to a work setting and interact appropriately with co-workers, supervisors and the general public." (Tr. 26.) Therefore, Plaintiff's reliance on *Millhouse* does not support his argument.

Plaintiff also relies on *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) to support his argument. However, the *Winschel* decision is distinguishable as well. In *Winschel*, the Eleventh Circuit addressed the issue of whether an ALJ's hypothetical question to a vocational expert adequately accounted for the plaintiff's moderate difficulties in concentration, persistence, or pace. *Id*. at 1180-81. Moreover, the *Winschel* decision provides that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such

limitations." *Id*. at 1180; *see Scott v. Comm'r of Soc. Sec.,* 495 Fed. App'x 27, 28-29 (11th Cir. 2012); *Allen v. Astrue*, No. 8:12-CV-633-T-23AEP, 2013 WL 1245980, at *9 (M.D. Fla. Feb. 12, 2013), *report and recommendation adopted*, No. 8:12-CV-633-T-23AEP, 2013 WL 1245979 (M.D. Fla. Mar. 26, 2013).

Here, in Plaintiff's case, however, the ALJ did not use a vocational expert. Further, Plaintiff argues that there is no substantial evidence to support the ALJ's finding that Plaintiff's limitation in attention and concentration would not significantly limit productivity. (Dkt. 15 at 15.) However, based on the medical record in this case, Plaintiff presented with a logical and coherent thought process, intact attention and concentration, intact recent and remote memory, no hallucinatory experiences, delusions or compulsions. (Tr. 308.) He was oriented with respect to time, place and person, and his intellectual functioning was estimated to be within the average range. *Id*.

Further, Plaintiff cites to agency psychologist Dr. Tessler's findings in support of Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace due to depression. (Tr. 70-71.) Nonetheless, in the "Residual Functional Capacity" findings, Dr. Tessler found that "[a]lthough [claimant] may be apt to have lapses in focus, motivation, and reliability, the frequency, intensity, and duration of these occurrences would not be expected to significantly or routinely detract from [claimant's] ability to execute/complete simple, routine (vs. complex) occupational tasks at a reasonable pace under normal supervision." (Tr. 75.) Although Plaintiff was found to be moderately limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods, his ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision and make

simple work-related decisions are not significantly limited. (Tr. 74-75.) Plaintiff failed to demonstrate that a limitation to unskilled work did not account for his limitations in concentration, persistence, or pace as a result of his mental impairment, given his medical history and findings upon examination. *See generally Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir. 1991) ("The burden is upon the claimant to demonstrate the existence of a disability as defined by the Social Security Act."); *Allen*, No. 8:12-CV-633-T-23AEP, 2013 WL 1245980, at *9 (finding plaintiff failed to demonstrate that a limitation to unskilled work did not account for her limitations in concentration, persistence, or pace as a result of her mental impairment).

To the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore*, 405 F.3d at 1213 (quoting *Bloodsworth,* 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer*, 395 F.3d at 1210.

**B.     The ALJ's Reliance on the Grids**

Next, Plaintiff argues that the ALJ erred by applying Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 2 ("Grids") at step five of the sequential analysis because the ALJ failed to properly credit all of Plaintiff's exertional and non-exertional impairments. (Dkt. 15 at 15-16.) Specifically, Plaintiff argues that his limitations due to his severe impairments of depression, anxiety, and contractures of the hands would preclude a wide range of employment, for which the ALJ needed expert testimony to determine the availability of jobs. (Dkt. 15 at 16.)

At step five of the sequential evaluation process, the ALJ must determine whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam). The Commissioner bears the burden at step five to show the existence of such jobs. *Id.* In determining whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either (1) apply the Grids or (2) consult a vocational expert. *Phillips v Barnhart*, 357 F.3d 1232, 1239–40 (11th Cir. 2004).

Exclusive reliance on the Grids is not appropriate if either of the following conditions exist: (1) the claimant is unable to perform a full range of work at a given residual functional level or (2) the claimant has non-exertional impairments that significantly limit basic work skills. *Id.* at 1242. "It is only when the claimant can clearly do unlimited types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A Mar. 1981)). If the ALJ concludes that the claimant can perform a full range or unlimited types of work at a given exertional level despite any exertional limitations, then the ALJ must next determine whether the claimant's non-exertional limitations affect the claimant's ability to secure employment at the given work level in the national economy. *Phillips*, 357 F.3d at 1242. In making this finding, the ALJ must determine whether the claimant's non-exertional limitations significantly limit the claimant's basic work skills—that is, whether the claimant's non-exertional limitations prohibit the claimant from performing "a wide range of work at a given work level." *Id.* at 1243. If the ALJ determines that the claimant's non-exertional limitations do not significantly limit his or her basic work skills at

the given work level, then the ALJ may rely on the Grids to determine if the claimant is disabled. *Id.*

Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b). Non-exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. *Id.* § 404.1569a(c). Examples of non-exertional limitations include, without limitation, difficulty working due to nervousness, anxiety, depression, maintaining attention or concentration, understanding or remembering detailed instructions, tolerating dust or fumes, or performing manipulative or postural functions. *Id.* § 404.1569a(c)(1).

Here, once the ALJ determined that Plaintiff did not have any past relevant work, the burden shifted to the Commissioner to show the existence of jobs in the national economy that Plaintiff could perform, given Plaintiff's impairments. The ALJ concluded that, based on Plaintiff's exertional limitations, Plaintiff retained the RFC to perform light work. (Tr. 26.) Plaintiff offers no support for the argument that the ALJ did not properly "credit" all of Plaintiff's exertional impairments other than the blanket statement that "had the ALJ properly credited all of Plaintiff's exertional and non-exertional impairments, vocational expert testimony would have been required at the hearing." (Dkt. 15 at 16.)

Light work is one of the five classifications of jobs in the national economy, each of which is based on its respective physical exertion requirements. 20 C.F.R. § 416.967. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted may

> be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). In limiting Plaintiff to light work, the ALJ found that given Plaintiff's impairments, he can occasionally lift no more than 25 pounds, frequently lift no more than ten pounds and sit, stand, and walk for six hours in an eight hour workday. (Tr. 26.) Aside from these limitations, the ALJ found that Plaintiff's conditions are not so debilitating that they prevent him from performing light work with the ALJ's additional limitations. (Tr. 27-28.) Specifically, the ALJ referenced Plaintiff's medical record and noted that the treatment for Plaintiff's back pain has been relatively sparse and has consisted of primarily conservative medication management with a few if any recommendations for surgery or more aggressive treatment. (Tr. 27.) The ALJ also found Plaintiff has unlimited abilities to push and pull. (Tr. 26.) Therefore, the ALJ properly concluded that Plaintiff retained the ability to perform the full range of light work despite these exertional limitations.

Next, the ALJ was required to determine whether Plaintiff's non-exertional limitations significantly limit his basic work skills. That is, the ALJ was required to determine whether Plaintiff's non-exertional limitations preclude a wide range of work at the light-work level. Here, the ALJ concluded that Plaintiff has some limitation in attention and concentration that would limit pace and persistence occasionally, but not at a level that would significantly limit productivity. (Tr. 26.) Specifically, the ALJ found Plaintiff able to hear, understand, learn, remember, and carry out detailed work instructions, make work decisions, and sustain attention and concentration sufficient to complete and eight-hour workday and five-day workweek. (Tr. 26.) The ALJ also

found that Plaintiff has no manipulative, visual, communicative, postural, or environmental limitations, except for avoidance of ropes, ladders, scaffolds, and unprotected heights. *Id*.

In making his determination, the ALJ considered Plaintiff's testimony that Plaintiff spends most of his days lying or sitting, has depression and anxiety, is paranoid, does not like crowds and tried to commit suicide. (Tr. 27.) The ALJ also considered Plaintiff's medical records, which indicate that Plaintiff exhibited normal mental status examinations with intact attention and concentration, full orientation, intact memory, and normal thought processes. (Tr. 27.) The ALJ specifically considered Plaintiff's "extensive activities of daily living that include preparing simple meals, doing chores such as laundry and light cleaning, shopping, and managing his finances." (Tr. 27.) The ALJ further considered and gave great weight to the State agency physicians and psychologists' reports, which were consistent with the longitudinal medical records. (Tr. 28.) The ALJ then found that Plaintiff's non-exertional mental limitations have little or no effect on the light, unskilled occupational base. (Tr. 29.) Thus, the ALJ determined that the Plaintiff's non-exertional limitations do not significantly limit his basic work skills at the given work level, and the ALJ properly relied on the Grids to determine that Plaintiff is not disabled. *Phillips*, 357 F.3d at 1239-40.

C. **Credibility of Plaintiff's Pain Testimony**

Plaintiff's final contention is that the ALJ erred in discrediting his testimony. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff's imaging tests for his back have revealed only mild abnormalities and in describing Plaintiff's treatment for his back as conservative. (Dkt. 15 at 18-19.) Plaintiff further contends that the ALJ erred in considering Plaintiff's sparse treatment for his back. *Id*.

In addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from the condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Id.*; *Wilson*, 284 F.3d at 1225.

The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt*, 921 F.2d at 1223. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *see also Holt*, 921 F.2d at 1223 ("[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d. at 1562.

When evaluating a claimant's subjective symptoms, the ALJ must consider such factors as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3). The credibility determination does not need to cite particular phrases or formulations. However, it cannot merely

be a broad rejection that is not enough to enable the reviewing court to conclude that the ALJ considered the medical condition as a whole. *Dyer*, 395 F.3d at 1210.

In evaluating the Plaintiff's subjective complaints of pain, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 27.) As such, the ALJ concluded that Plaintiff had an underlying medical condition that could give rise to disabling pain, but the evidence did not show that his condition was severe enough to produce disabling pain. *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 764 (11th Cir. 2011).

Although Plaintiff points to specific medical evidence to argue that Plaintiff's medical records support his complaint, these discrete findings alone do not disturb the ALJ's finding that the medical evidence did not corroborate his subject complaints regarding his limitations. *See Dyer*, 395 F.3d at 1211. Plaintiff argues that the ALJ erred in finding that Plaintiff's lumbar spine "imaging tests have revealed only mild abnormalities." (Tr. 27.) Plaintiff points to a record from Dr. Shoba Sama dated December 7, 2011, wherein Dr. Sama noted Plaintiff's medical history "is significant for osteoarthritis and multilevel degenerative changes in the lumbar spine." (Tr. 346.) Plaintiff also relies on records from Dr. Hasan Mousli and the reference to an MRI of Plaintiff's lumbar spine. (Dkt. 15 at 4, 18). Specifically, on April 4, 2012, Dr. Mousli noted that Plaintiff's MRI showed degenerative joint disease and degenerative disc disease. (Tr. 295). On June 13, 2012, Dr. Mousli referred to Plaintiff's low back pain as "severe" degenerative joint disease and degenerative disc disease. (Tr. 298.)

While the April 2012 record referencing Plaintiff's lumbar spine MRI does not specifically state Plaintiff's abnormalities are "mild," Dr. Goodpasture references the MRI in her determination

that Plaintiff can perform light work. (Tr. 74.) Further, the ALJ specifically noted the April 2012 and June 2012 medical findings in her decision but ultimately found that the medical evidence of record showed "minimal abnormalities with the claimant exhibiting a normal gait, intact sensation, and full reflexes." (Tr. 23, 27.) The ALJ's finding is supported by the record. (Tr. 344, 347, 350, 371-372, 375, 389.) On February 17, 2012, Dr. Sama noted that Plaintiff had a normal gait and normal range of motion. (Tr. 340.) On April 4 and 13, 2012 and May 4, 2012, Dr. Sama noted that Plaintiff's sensation and reflexes were normal. (Tr. 331, 334, 337.) On November 30, 2012, Dr. Sama noted that Plaintiff had a "normal gait; normal range of motion of all major muscle groups" and normal sensation and reflexes. (Tr. 322.) The ALJ also considered Plaintiff's extensive activities in daily living, which include preparing simple meals, doing chores such as the laundry and light cleaning, shopping, and managing his finances. (Tr. 27, 217-219.) Thus, any error in the ALJ's statement that "[o]bjective imaging tests have revealed only mild abnormalities" is harmless and does not warrant remand as there is substantial evidence to support the ALJ's determination of Plaintiff's credibility. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision).

Plaintiff next argues that the ALJ erred in considering Plaintiff's "relatively sparse" medical treatment for his back pain in determining Plaintiff's credibility because Plaintiff lost his insurance after he became homeless. (Dkt. 15 at 19.) Inconsistencies in a plaintiff's medical treatment history is a proper consideration when determining a plaintiff's credibility. *Ogranaja v. Com'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (finding that gaps in treatment history supported discrediting a plaintiff's claims of pain). Here, Plaintiff testified that he still had insurance when he first stopped working. (Tr. 42.) Plaintiff argues that while he did seek treatment at that time, he was not able to go to all the specialists he was referred to "likely due to the fact

that few doctors would accept the low reimbursement rate" of his insurance plan. (Dkt. 15 at 19.) Plaintiff provides no support for this statement. Plaintiff further argues that the ALJ must consider explanations of infrequent or irregular medical visits or failure to seek treatment and not draw any negative inferences about an individual's symptoms if the explanation is adequate. (Dkt. 15 at 19.) In support of this argument, Plaintiff cites to the specific Social Security Ruling 96-7p. Social Security Ruling 96-7p has been superseded by Social Security Ruling 16-3p effective March 28, 2016. However, both Social Security Ruling 96-7p and 16-3p contain the language that an ALJ shall consider possible reasons a claimant may not seek treatment consistent with the degree of his or her complaints. Here, the ALJ considered Plaintiff's testimony regarding his lack of insurance, stating in her decision that "[t]he claimant reported that he no longer has health insurance and that it has been hard to get treatment." (Tr. 27.) Therefore, the ALJ took Plaintiff's reasons into consideration.

Plaintiff also argues that the ALJ erred in discrediting his testimony because Plaintiff's treatment for his back pain was not conservative. Plaintiff argues that he was being treated with epidural injections and narcotic pain medications and that the ALJ has "made up a new criteria for disability benefits, i.e., one must have undergone surgery" to be deemed disabled. (Dkt. 15 at 19.) However, the ALJ did not make her own medical findings nor make the unequivocal statement that Plaintiff is not disabled merely because he has not undergone surgery. Rather, the ALJ noted Plaintiff's lack of more aggressive treatment that would be expected for the degree of pain alleged by Plaintiff. (Tr. 27.) Treatment is a proper factor for the ALJ to consider when evaluating the intensity and persistence of a plaintiff's alleged symptom. 20 C.F.R. § 416.929(c)(3)(v); *Wolfe v. Charter*, 86 F.3d 1072, 1078 (11th Cir. 1996).

The Court finds that the ALJ's specific reasons for her credibility determination are supported by substantial evidence, as the objective medical evidence supports the findings as to the severity of Plaintiff's alleged symptoms. The ALJ considered Plaintiff's medical condition in its entirety and specifically identified evidence that discredits his complaints. Plaintiff's final contention, therefore, does not warrant reversal.

## CONCLUSION

The Commissioner's determination that Plaintiff is not disabled is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). The Court's review is limited. As explained previously, the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth*, 703 F.2d at 1239. Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.
2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 27, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record